UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONALD E. MUDICA, III, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:19-CV-1090-DRL-MGG |
| WARDEN, | |
| Defendant. | |

OPINION & ORDER

Donald E. Mudica, III, a prisoner without a lawyer, filed an amended complaint and an amended motion for preliminary injunctive relief. The court screened Mr. Mudica's amended complaint and granted him leave to proceed against the Warden of the Westville Correctional Facility in his official capacity for injunctive relief to ensure he is provided with constitutionally adequate medical care for the worsening symptoms in his head, ears, and jaw related to the cyst and sores in his mouth as required by the Eighth Amendment. The court also directed the Warden to file a response to the motion for preliminary injunction with a sworn statement (and supporting medical documentation as necessary) explaining how Mr. Mudica is receiving constitutionally adequate medical care. The Warden filed his response, and Mr. Mudica filed his reply. Thus, the motion is ripe.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). To obtain a preliminary injunction, the moving party must show: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323-24 (7th Cir. 2015). An injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly

issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quotation marks and citation omitted). It is true that every inmate is entitled to receive constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Before an inmate can obtain injunctive relief, he must make a clear showing that the medical care he is receiving violates the Eighth Amendment prohibition on cruel and unusual punishment. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012); *Mazurek*, 520 U.S. at 972.

Mr. Mudica's allegations regarding his condition and previous medical history are set forth in detail in the court's screening order. ECF 12 at 2–3. In a nutshell, Mr. Mudica alleges that he arrived at the Westville Correctional Facility in April 2019 and began complaining about his preexisting head, neck, shoulders and ears as well as his sinus drainage issues. He was seen and treated by medical personnel several times throughout the following months—including being prescribed antibiotics and steroids, and undergoing an x-ray—but his condition did not resolve. Mr. Mudica's blood was drawn in September to look for infections, and the labs came back normal. *See* ECF 18-2 at 9 (noting "normal laboratory studies from 9/2019"). On November 6, 2019, he visited Dr. Jackson who diagnosed him with a "cyst." ECF 3 at 4. According to Mr. Mudica, Dr. Jackson told him that "nothing" would be done for it. *Id.* Mr. Mudica alleges that, though he continued to complain of pain, he has not been seen or treated for the worsening symptoms since his diagnosis in November.

The Warden has responded with an affidavit (ECF 18-3) and with additional medical records (ECF 18-1, ECF 18-2). The treatment notes from the November 6 visit indicate that Dr. Jackson evaluated Mr. Mudica for a pea sized lump on his gumline. According to the notes, "[a] very thorough oral exam with gloves" was performed, which showed a "small left buccal mucosa cystic mobile lesion with no ulceration per mucosal exam." ECF 18-2 at 1. The remainder of the oral exam, including the tongue, was negative for ulcers or lesions, and "no derm lesion [was] seen on left mid face." *Id.*

2

Importantly, the exam showed no adenopathy (*i.e.* large or swollen lymph glands).[1] Dr. Jackson noted that Mr. Mudica complained the cyst was causing facial swelling, pain, and difficulty swallowing, but he determined that these symptoms were "very odd" and "not in the least bit true in my medical opinion." *Id.* Dr. Jackson described Mr. Mudica as "appear[ing] very healthy" and observed that his trachea and speech were normal. *Id.* He concluded that no oral biopsy or further follow-up was needed for the "benign left mucosal cyst" or the symptoms Mr. Mudica alleged were related to it. *Id.* at 2.

Since that visit, Mr. Mudica has been seen by the medical staff on multiple occasions for a variety of related and unrelated (mainly gastrointestinal) issues. *See generally* ECF 18-2 at 4–21. Relevant to the instant motion, he presented for a nurse visit on November 19, 2019 for continued pain and pressure to his head and face, insisting that "it is not a cyst." *Id.* at 9. The nurse noted normal examination findings and commented that the issues Mr. Mudica had complained of had been addressed several times. *Id.* On January 26, 2020, Mr. Mudica presented for a knot on his neck between his shoulder blades, stating that he was "dying" and had discovered what was making him sick. *Id.* at 15. The nurse performed an examination of his neck, noted tenderness, pain, and swelling, and diagnosed him with discomfort related to a strain/sprain. *Id.* at 16. She directed him to use warm compresses and Tylenol for the discomfort, and she advised him to follow-up if there was no improvement. *Id.* On February 8, 2020, Mr. Mudica presented for head pressure. *Id.* at 18. The nurse described Mr. Mudica's complaints in his own words as follows:

> I still need to be seen for the problems I am having from my shoulders up. My left ear is making loud cracking sounds and I am feeling pressure in my head. Medical keeps ignoring my condition when I explain the seriousness of this condition. I am convinced I have some type of cancer or life threatening condition while Wexford medical is letting me die. Please treat my condition!

---

[1] *See* https://www.cancer.gov/publications/dictionaries/cancer-terms/def/adenopathy (last visited Apr. 1, 2020).

*Id.* The nurse examined Mr. Mudica and noted normal external and internal ear canal findings that were "unremarkable" and within normal limits. *Id.* at 19–20. The nurse also noted that his cervical lymph nodes were neither tender nor enlarged and that there was no change in his condition overall as related to his prior complaints and symptoms. *Id.* He was diagnosed with potential "alerted sensory perception" related to a headache and was given no new orders. *Id.*

Mr. Mudica has replied, reiterating that he is seeking treatment for his worsening condition in his neck and head. ECF 20. He states that "obviously if the conditions have spread throughout my neck head and face since November 6th, then Dr. Jackson is not treating me for the symptoms from my shoulders up . . .." *Id.* at 1. He also states that he is suffering from hearing loss "very near the cyst" including loud popping and cracking noises in his left ear. *Id.* Of note, however, Mr. Mudica does not dispute that he was seen and examined on the aforementioned dates.

It is clear that Mr. Mudica disagrees with the medical care he is receiving. However, a mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). In fact, "medical professionals are not required to provide 'proper' medical treatment to prisoners, but rather they must provide medical treatment that reflects 'professional judgment, practice, or standards.'" *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citation omitted); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment.").

Here, as noted above, the record establishes that Dr. Jackson diagnosed Mr. Mudica with a benign cyst and determined that the symptoms Mr. Mudica complained of were not credible in his medical opinion. He has since been seen by the medical staff on at least three occasions for symptoms he describes as worsening. In November he was examined, and the findings were described as normal. In January he was examined, and the pain and swelling related to the knot in his neck was diagnosed

4

as a sprain/strain; he was told to use Tylenol and warm compresses to alleviate the pain. In February he was examined, and the pain and pressure in his head was diagnosed as alerted sensory perception related to a headache, while his ears were examined and described as being unremarkable and within normal limits.

Accordingly, this is not a case where an inmate is being ignored by medical staff; rather, it is one where an inmate disagrees with the diagnoses and treatment being provided. Mr. Mudica has not established, by a clear showing, that the medical care he is currently receiving violates the Constitution. *See Arnett*, 658 F.3d at 751; *BBL, Inc.*, 809 F.3d at 323–24; *see also Snipes*, 95 F.3d at 592 (suggesting that the total alleviation of pain is not constitutionally required and noting that, "[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd"). Moreover, based on the current record, which shows that Mr. Mudica has been seen and evaluated by medical staff consistently for a variety of ailments following the November 6 diagnosis, there is no indication that such care will cease absent a court order when or if he presents with new symptoms. Thus, he has also not shown that he will suffer irreparable harm pending the final resolution of his claims. *See BBL, Inc.,* 809 F.3d at 323–24.

As a final matter, after he filed his reply, Mr. Mudica sent the court several letters and a motion regarding his condition. ECF 21, 22, 24. In them, he provides more recent updates as to his symptoms. Although he states that he has continued to submit healthcare requests, he does not provide specific details as to these requests, nor has the Warden had the opportunity to address the new allegations. Many of the issues Mr. Mudica describes fall completely outside of the scope of this lawsuit (*i.e.* intestinal/bowel/constipation issues and concerns about COVID-19), so they are not appropriately addressed here. *See Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)

5

("Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). Nevertheless, in an abundance of caution, the court will direct the clerk to send copies of these documents directly to the Warden so that he may determine whether any action is necessary.

In sum, in light of the foregoing, Mr. Mudica has not demonstrated that he has a reasonable likelihood of success on the merits or sustained his burden of demonstrating that he will suffer irreparable harm if a preliminary injunction does not issue. Put simply, Mr. Mudica has not shown that a preliminary injunction is proper at this time.

For these reasons, the court:

(1) DENIES the amended request for a preliminary injunction (ECF 5);

(2) DENIES the motion to consider (ECF 22); and

(3) DIRECTS the clerk to send a copy of this order and Donald E. Mudica, III's, recent filings (ECF 21, 22, 24) directly to the Warden of the Westville Correctional Facility.

SO ORDERED.

April 6, 2020                             *s/ Damon R. Leichty*
                                          Judge, United States District Court