UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DONALD E. MUDICA, III,

    Plaintiff,

    v.                                CAUSE NO. 3:19-CV-1090-DRL-MGG

WARDEN,

    Defendant.

OPINION AND ORDER

Donald E. Mudica, III, a prisoner without a lawyer, filed an amended complaint and an amended motion for preliminary injunctive relief. The court screened the amended complaint and granted him leave to proceed against the Warden of the Westville Correctional Facility in his official capacity for injunctive relief to ensure he is provided with constitutionally adequate medical care for the worsening symptoms in his head, ears, and jaw related to the cyst and sores in his mouth as required by the Eighth Amendment. ECF 12. After receiving the Warden's response and supporting medical documentation and reviewing the parties' arguments, the court denied Mr. Mudica's motion for preliminary injunctive relief because he had not established that the care he was receiving violated the Constitution. ECF 27. The court concluded that, while Mr. Mudica claimed generally that "nothing" was being done to treat or diagnose his symptoms since he saw Dr. Jackson who diagnosed him with a benign left mucosal cyst November 6, 2019, he had not disputed the medical evidence submitted by the Warden that showed he had been subsequently evaluated by the medical staff on multiple

occasions for a variety of related and unrelated (mainly gastrointestinal) issues. *See id.* at 2–4 (citing ECF 18-2 at 4–21). Accordingly, the court concluded that "this is not a case where an inmate is being ignored by the medical staff; rather, it is one where an inmate disagrees with the diagnoses and treatment being provided. Mr. Mudica has not established, by a clear showing, that the medical care he is currently receiving violates the constitution." *Id.* at 5. (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) and *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The court also noted that, based on the record presented, there was "no indication that such care will cease absent a court order when or if he presents with new symptoms." *Id.*

Mr. Mudica has filed a "Motion for a Second Opinion from an Outside Physician" (ECF 32) and a "Motion to Reconsider Preliminary Injunction" (ECF 33), both of which challenge the court's denial order. The Warden has filed a response (ECF 36), and Mr. Mudica has filed several supplements that the court will construe as his reply (ECF 38 & ECF 39). Thus, the motions are ripe for adjudication.

Reconsideration of an interlocutory order "is a matter of a district court's inherent power" and is "committed to a court's sound discretion." *Cima v. Wellpoint Health Networks, Inc.*, 250 F.R.D. 374, 386 (S.D. Ill. 2008) (citations omitted). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Res., Inc. v. Walker–Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (citation omitted); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (granting a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the

2

adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.") (citation omitted).

Here, Mr. Mudica asks the court to "order the Department of Corrections to follow the orders of his private physician, or a second opinion of an outside doctor which is not affiliated with IDOC." ECF 32 at 2; *see also* ECF 33 at 4, 6 (requesting a second opinion by an outside doctor, an MRI, and medical treatment for his condition). He claims that it is impossible to prove he would suffer irreparable harm before the final resolution of his claims without a second opinion from an outside specialist. Mr. Mudica alleges that the court erred because it "did not consider that the plaintiff is a 'lay person' in dealing with the law." ECF 33 at 1. He alleges that the Warden is being deliberately indifferent to his medical needs because he has "not received any treatment for his condition since [November 6, 2019, when] Dr. Jackson cease and desist all treatments" related to any request regarding his ears, head, neck, or cyst. *Id*. at 5.

Mr. Mudica's motions essentially rehash his previous arguments and reiterate his prior allegations. He has not provided a valid basis for granting the motion to reconsider and implementing preliminary injunctive relief. To begin, although Mr. Mudica contends the court erred by not considering his *pro se* status when ruling on the motion, this argument is without merit. While it is true that a document filed *pro se* must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *pro se* litigants are not relieved from

meeting the demanding standards necessary to obtain preliminary injunctive relief. *See e.g. Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020); *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Moreover, the undisputed medical evidence presented by the parties shows that Mr. Mudica was seen by medical staff several times following the examination by Dr. Jackson—he was reexamined for pain and pressure in his head and to his face which resulted in normal findings, was directed to use Tylenol and warm compresses for a strain/sprain in his neck, and was diagnosed with "alerted sensory perception" related to a headache when he presented for head pressure, pain, and cracking sounds in his ear. Accordingly, there was no manifest error of law or fact when the court denied the motion because Mr. Mudica had not established the medical care he was receiving at that time violated the constitution or would likely cease absent a court order.

Moreover, to the extent Mr. Mudica is arguing in his later filed supplements that a change in the facts since the initial submission of the issue requires the issuance of a preliminary injunction, the court disagrees. Mr. Mudica's subsequent filings—which include medical documentation—show that he has continued to receive medical care for the issues related to his worsening symptoms in his head, ears, and jaw related to the cyst and sores in his mouth since the original motion was denied. Specifically, on June 11, 2020, he was referred to dental where he received a thorough examination of his mouth and an x-ray; however, the dentist cancelled the cavity filling procedure and referred him back to medical. ECF 38 at 3. Throughout the remainder of the June, Mr. Mudica submitted almost daily health care requests. *See* ECF 44 at 2–4. Many of the responses

4

indicated he was scheduled for an upcoming consult. *Id*. On July 16, 2020, Mr. Mudica was transported to the Plainfield Correctional Facility where he was examined by oral surgeon Dr. Alderman. *Id*. at 5. According to Mr. Mudica, Dr. Alderman advised him that there was "something deep down in his neck," and he was referred to an ENT specialist. *Id*. Dr. Alderman removed a painful tooth and also allegedly opined that the lesion on the left buccal mucosa was not a cyst. *Id*.

When he returned to the Westville Correctional Facility, Mr. Mudica continued to complain of pain. *Id*. at 5–6. He was informed that he would be scheduled to see an ENT. *Id*. at 5. On September 2, 2020, Mr. Mudica was transported to the South Bend Clinic where he was examined by an ENT specialist, Dr. Mark Oudghiri. ECF 50 at 2. As to his painful swallowing (odynophagia),[1] Dr. Oudghiri noted that there was no acute infection, that the intraoral exam was "relatively unremarkable," and that his oropharynx had a cobblestone appearance which was most likely due to acid reflux. ECF 54-1 at 33. He prescribed Augmentin and Protonix or omeprazole (Prilosec). *Id*. As to his swollen lymph nodes (cervical lymphadenopathy),[2] Dr. Oudghiri noted tenderness to light palpitation and ordered a CT scan and bloodwork to rule out an abscess and/or malignant process. ECF 50 at 2 & ECF 54-1 at 33. Dr. Oudghiri also assessed Mr. Mudica's ear pain and noted that the results of the exam were "unremarkable" and that the pain was likely related to his throat. ECF 54-1 at 33. He prescribed acetaminophen or ibuprofen for pain. *Id*. On

---

[1] *See* https://ufhealth.org/painful-swallowing (last visited March 17, 2021).

[2] *See* https://www.entcolumbia.org/staywell/lymphadenopathy (last visited March 17, 2021).

5

September 25, 2020, Mr. Mudica saw Dr. Jackson for unrelated stomach issues, who agreed to give him the aforementioned Prilosec and Tylenol.[3] ECF 50 at 2.

On October 20, 2020, a CT scan was performed at Franciscan Hospital. ECF 54 at 6. On October 29, 2020, Dr. Jackson met with Mr. Mudica and informed him that the results of the CT scan were normal, but Mr. Mudica believed that Dr. Jackson was being untruthful. *Id*. However, the final report submitted to the court by Mr. Mudica indicates that the CT scan of the soft tissue in his neck—which was performed with IV contrast to address the lesion on his mandible and the related pain—found his posterior nasopharynx, oropharynx, larynx, bilateral parotid glands, and bilateral submandibular glands to be "unremarkable." ECF 54-1 at 37. His oral cavity was noted to be "grossly intact," his sinuses were "grossly clear," and there were "[n]o significant abnormal enlarged neck lymph nodes." *Id*. A note indicates that [i]f there is persistent clinical concern or symptom MRI to be considered." *Id*. The overall impression of the interpreting physician was that there was "[n]o significant abnormality" found. *Id.*

On December 2, 2020, in response to a health care request, he was prescribed and received Prednisone. ECF 54 at 6; *see also* ECF 54-1 at 28. On December 28, 2020, he met with Dr. Jackson who allegedly told him there is "nothing wrong with you," but he informed Mr. Mudica that he would be placed on a unit for observation with a medical

---

[3] However, Mr. Mudica indicates he was never given the Augmentin. ECF 54 at 6.

6

code of F, which Mr. Mudica describes as having "24 hr on site medical staff."[4] ECF 54 at 7. Dr. Jackson allegedly knew the transfer would need to be preceded by a fourteen-day quarantine in a restrictive housing unit due to COVID-19 and that, accordingly, Mr. Mudica would not have access to his Tylenol supply which had run out several days before. *Id*. On December 29, 2020, he was moved to a restrictive housing unit, and the form noted it was for "medical" reasons. ECF 55 at 7. Mr. Mudica states that he ordered ibuprofen for his pain, but he won't receive it until he is moved back into the general population at the end of his quarantine period.[5] ECF 54 at 8. Subsequent documents submitted by Mr. Mudica indicate that he has since been moved out of restrictive housing and into a medical unit with the general population, but he does not indicate whether he is currently receiving any pain medication. ECF 57.

Based on the foregoing, Mr. Mudica has not carried his burden of persuasion necessary to establish that preliminary injunctive relief is warranted even if the supplemental information is considered by the court. Though he insists generally that he is not receiving "any treatment" for his painful condition, the medical evidence described above shows otherwise. Broad assertions that are contradicted by the record do not provide the strong showing necessary to demonstrate Mr. Mudica is likely to win his case or that he will suffer irreparable harm absent a mandatory injunction. *See Pritzker*, 973

---

[4] Mr. Mudica alleges that this was done by Dr. Jackson in retaliation for filing multiple grievances and for initiating this lawsuit, but this claim is not currently before the court as it was not in the complaint on which he was permitted to proceed. *See* ECF 12.

[5] Mr. Mudica signed this document on January 11, 2021, prior to the expiration of the fourteen-day quarantine period. ECF 54 at 9.

F.3d at 762–63; *Mays*, 974 F.3d at 818 (7th Cir. 2020); *see also Snipes*, 95 F.3d at 592 (suggesting that the total alleviation of pain is not constitutionally required and noting that, "[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd"). Again, although Mr. Mudica clearly disagrees with the treatment he is being provided, it has been consistent and progressive throughout the time-period in question, and there is no indication it will cease absent court intervention. In fact, Mr. Mudica admits that he has been moved to a medical unit which allegedly has 24-hour onsite medical staff.

Moreover, since filing his motion, not only has Mr. Mudica been seen by an oral surgeon at a different prison, but he has been evaluated for a second opinion by an "outside doctor which is not affiliated with IDOC" as he requested—namely, ENT specialist Dr. Oudghiri who noted Mr. Mudica had no acute infection and relatively unremarkable examination findings. He prescribed Tylenol for the pain and Prilosec, both of which were given to Mr. Mudica once he returned to the Westville Correctional Facility.[6] As to Mr. Mudica's requests for an MRI, Dr. Oudghiri ordered a CT scan rather than an MRI. The CT scan was performed less than two months later and resulted in

---

[6] Although he indicates his prescription for Tylenol ran out at the end of December 2020, Mr. Mudica admits he ordered ibuprofen while in restrictive housing, and the record does not show that he hasn't received it since being transferred to the medical unit. Additionally, Mr. Mudica alleges that he was not given the Augmentin prescribed by Dr. Oudghiri, but—even if true—a disagreement between medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The absence of the antibiotic alone, when considered in light of the medical evidence in its totality—which shows that Mr. Mudica *did* receive diagnostic testing and the Prilosec and Tylenol—does not warrant the issuance of injunctive relief.

normal findings with no significant abnormalities found.[7] Thus, much of the specific relief Mr. Mudica requests is now moot. Additionally, because a mere disagreement with a diagnosis does not violate the Constitution and a prisoner cannot dictate how such medical care is provided, *see Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012), the motions for reconsideration will be denied.

Mr. Mudica also filed a "Motion Showing Compliance to the Order of the Court Regarding Counsel" (ECF 37) and a "Verified Request for Appointment of Counsel" (ECF 40), both of which ask the court to appoint counsel to represent him in this matter. The court denied Mr. Mudica's previous request because he had not made a reasonable attempt to obtain counsel. ECF 31. Mr. Mudica was informed that he could refile his motion after sending a copy of this court's screening order to ten attorneys along with a letter asking they represent him and waiting a reasonable length of time for responses. *Id*. If he chose to file another motion, he was directed to list the attorneys he contacted, attach whatever responses he received, and to "explain why he believes this case is difficult and why he is not competent to litigate it himself. He not only needs to detail all

---

[7] Mr. Mudica points out that the CT scan was only performed with contrast rather than with and without contrast. Additionally, a note on the CT scan results states an MRI may be "considered" if there are persistent clinical concerns or symptoms (but it does not mention a timeframe or indicate the MRI is required or urgent). Neither of these facts demonstrate that Mr. Mudica is currently failing to receive constitutionally adequate medical care. *See Pyles*, 771 F.3d at 411 (prisoner presented evidence that his family physician would have ordered an MRI, but the court determined that the prison doctor's failure to follow that advice was simply a "classic example of a matter for medical judgment" rather than evidence of deliberate indifference). Moreover, based on the record presented, it is not reasonable to conclude that an MRI would not be ordered at some future point if it is deemed medically necessary.

of his education history, but he also needs to provide the court with information about his litigation experience as well." *Id.* at 2.

"There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) (*citing Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007)). However, in some circumstances, the court may ask an attorney to volunteer to represent indigent parties for free.

> When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?

*Pruitt*, 503 F.3d at 654.

Based on Mr. Mudica's current motions and related documentation, the court finds that Mr. Mudica has made a reasonable attempt to obtain counsel on his own. However, it does not appear he is unable to litigate the case himself. Mr. Mudica claims generally that he has "limited knowledge of the law and legal procedures" and that he "lacks the capacity to adequately and competently represent himself" (ECF 40 at 1), but he has not provided any specific information about his education history or previous litigation experience. While he does mention his hearing loss as a potential obstacle, he has not shown any reason why this disability would affect the litigation proceedings at this stage (which consists mainly of written motions and documentation).[8] Additionally,

---

[8] Should he need the assistance of an interpreter for the purposes of any depositions that may arise, he may file a motion accordingly. Similarly, if the case proceeds to trial, Mr. Mudica may renew his request for appointment of counsel, making sure to explain the reasons why his hearing loss could potentially affect his ability to conduct a trial on his own.

although Mr. Mudica states in his motion that the "prison limits the hours that Plaintiff may have access to the law library, and the materials contained therein are very limited" (*Id.*), a later filing indicates that he has been "studying the Lexis Nexus app on the tablet and [is] beginning to understand how this works." ECF 51 at 2. In a letter sent to the court approximately one month later, Mr. Mudica admits that he "stud[ies] lexis nexus relentlessly and [is] aware of the prongs to establish a claim of deliberate indifference." ECF 56 at 2–3. In fact, Mr. Mudica cites to relevant caselaw throughout his recent filings. As such, any concerns with access to the prison law library materials seem to have been resolved. Similarly, Mr. Mudica claims that he is "unable to investigate and gather facts and evidence on his own that are crucial to proving his case" (ECF 40 at 1), but the record—which contains a plethora of medical documents and related grievance requests—shows otherwise.

Mr. Mudica also states in his motion that the "issues involved in this case are complex" (ECF 40 at 1), but he does not expand upon why he believes this to be true. The current claim before the court is solely whether Mr. Mudica is receiving medical care consistent with the Eighth Amendment and, if not, whether injunctive relief should be issued. Mr. Mudica appears to have a firm grasp on what his symptoms are and what medical care he is or is not receiving (as is evidenced by his numerous detailed and chronologically organized filings which cite to relevant medical documents and/or communications with prison officials). Even if Mr. Mudica is allowed to add additional claims regarding potential damages at some future date, he has stated that he understands the elements required to establish a claim of deliberate indifference. Finally,

Mr. Mudica insists that counsel is necessary in order to obtain a second opinion from an outside specialist; however, as noted above, Mr. Mudica has since received that second opinion, so that argument is moot.

In sum, after reviewing Mr. Mudica's voluminous filings, it is clear to the court that he is well-written, is able to communicate his positions effectively, can perform relevant legal research using a prison-supplied electronic device, has the ability to obtain appropriate documentation, and understands the overall nature of the case and the proceedings. Thus, appointing counsel for Mr. Mudica is not warranted at this time.

As a final matter, Mr. Mudica has filed a proposed second amended complaint (ECF 54) and a separate letter asking if he can be allowed to amend his complaint to "provide[] a more accurate description of this case." ECF 56 at 2. He subsequently filed additional documents containing exhibits and further information that he wishes to add to it. ECF 55 & ECF 57. At this stage, Mr. Mudica may amend his complaint with the opposing party's consent or with leave of the court. Fed. R. Civ. P. 15(a)(2). However, piecemeal amendments are not allowed, as this court's local rules provide that motions to amend must include a copy of the entire pleading as amended and "must not incorporate another pleading by reference." N.D. Ind. L.R. 15-1. Accordingly, Mr. Mudica will be granted additional time to submit a motion to amend along with a proposed second amended complaint in its entirety (containing all of his claims) in accordance with the Local Rules.

For these reasons, the court:

(1) DENIES the motion for a second opinion from an outside physician (ECF 32);

(2) DENIES the motion to reconsider (ECF 33);

(3) DENIES the motion regarding counsel (ECF 37);

(4) DENIES the motion for appointment of counsel (ECF 40);

(5) DENIES WITH LEAVE TO REFILE the request to amend (ECF 56);

(6) GRANTS Donald E. Mudica, III, until **April 23, 2021**, to either clarify that he wishes to proceed with the current amended complaint (ECF 3) **or** to file a motion to amend along with a proposed second amended complaint, making sure to include all claims and exhibits he wants the court to consider as part of that complaint; and

(7) STAYS the case pending the filing of either the clarification or the motion to amend and proposed second amended complaint.

SO ORDERED.

March 26, 2021               *s/ Damon R. Leichty*
                             Judge, United States District Court